UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                            Plaintiff,

                v.

PROPERTY   AND   CASUALTY   INSURANCE
COMPANY OF HARTFORD,

                            Defendant.

---

PROPERTY   AND   CASUALTY   INSURANCE
COMPANY OF HARTFORD,

                            Third-Party Plaintiff,

                v.

RICHARD L. WILSON,

                            Third-Party Defendant.

---

23 Civ. 619 (DEH)

**OPINION
AND ORDER**

---

DALE E. HO, United States District Judge:

In what is one of the largest government-run health systems in the world, the United States provides free or deeply discounted medical care to most military veterans through the Department of Veterans Affairs ("VA"). *About VHA*, U.S. Dept. of Veterans Affairs, https://www.va.gov/health/aboutvha.asp. This is without regard to whether the medical care is related to military service, leading to some instances in which the VA provides care at no charge to a veteran where medical expenses would otherwise have been paid for by a third party, like an insurance company. As a result, several statutory provisions allow the VA to bill that third-party for the cost of such care. As relevant here, 38 U.S.C. § 1729 ("Section 1729" or "§ 1729") entitles the government to recover from a workers' compensation when the VA treats a veteran's workplace injury that is covered by a workers' compensation policy.

The United States brings this action to recover the costs of treating Richard Wilson's severe injuries suffered while working at a construction site. However, Mr. Wilson and his workers' compensation insurer, Property and Casualty Insurance Company of Hartford ("Hartford") object, arguing that Mr. Wilson's signing of a release as part of a settlement bars the government's claim under § 1729. Separately, Mr. Wilson and Hartford dispute liability for the medical costs in the event the United States is entitled to reimbursement per the statute. The parties all move for summary judgment on issues of liability. *See* ECF Nos. 73 ("Hartford Motion"), 84 ("United States Motion"), 102 ("Wilson Motion"). They also jointly move to seal certain materials, ECF No. 70, and the United States moves to strike Hartford's proposed expert testimony, ECF No. 96.

As discussed below, the Court concludes that the United States is entitled to recover the unreimbursed medical costs from Hartford. Further, the Court finds that, pursuant to the settlement agreement entered between Mr. Wilson and Hartford, Mr. Wilson is required to indemnify Hartford for these costs. Accordingly, the United States' Motion is **GRANTED** in full, Hartford's Motion is **GRANTED IN PART AND DENIED IN PART**, and Mr. Wilson's motion is **DENIED**. The parties' joint motion to seal is **GRANTED**. The United States' motion to strike is **DENIED WITHOUT PREJUDICE.**

**BACKGROUND**

**A. Statutory Background**

The United States provides medical care through the VA for millions of veterans following the conclusion of military service. 38 U.S.C. § 1729 entitles the United States to "recover or collect from a third party" the "reasonable charges" of "care or services" furnished or paid for by the United States "to the extent that the recipient or provider of the care or services would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished or paid for by a department or agency of the United States." 38 U.S.C. §

2

1729(a)(1). In other words, when a third party, such as an insurer, would be liable to pay for the medical bills had the injured veteran gone to a non-VA hospital for care, the United States can seek reimbursement for the cost of providing care that the third-party was otherwise liable for. Overall, the United States has brought thousands of actions seeking reimbursement from workers' compensation insurers under this provision. *See* Declaration of Mark Gore, dated June 20, 2025 ("Second Gore Decl.") ¶ 6, ECF No. 140

Section 1729 was modelled after the Federal Medical Care Recovery Act, which allows the government to seek reimbursement from tortfeasors for the costs of medical care provided by the United States. *See United States v. Fort Benning Rifle and Pistol Club*, 387 F.2d 884, 885 (5th Cir. 1967) (explaining the purpose of the statute to allow said recovery).[1] Courts have consistently held that the United States has an independent right of recovery under the FMCRA in that, so long as state law establishes a tort violation that led to the injury, no settlement or release from the injured care recipient can void the government's right to recover costs directly from the tortfeasor. *See Holbrook v. Andersen Corp.*, 996 F.2d 1339, 1341 (1st Cir. 1993) ("[T]he government's right is not extinguished by the injured person's settlement and release with the tortfeasor."); *accord United States v. Hous. Auth. of City of Bremerton*, 415 F.2d 239, 241 (9th Cir. 1969); *Com. Union Ins. Co. v. United States*, 999 F.2d 581, 587 (D.C. Cir. 1993); *United States v. Gera*, 409 F.2d 117, 119 (3d Cir. 1969); *United States v. York*, 398 F.2d 582, 584 (6th Cir. 1968).

Turning back to § 1729, the statute explicitly provides that "[n]o law of any State or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under [that] section." 38 U.S.C. § 1729(f).

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

Thus, like the FMCRA, the government's right to recover for medical expenses that were the liability of a third-party cannot be extinguished by settlement between the injured person and said third-party.

**B.  Factual Background[2]**

On October 24, 2013, Mr. Wilson was injured when he fell through an unsecured sidewalk opening while working within the scope of his employment at JD Wilson Construction Corp. Wilson's Response to Plaintiff's Requests for Admission ("Wilson Resp. to Pl. RFAs"), Declaration of Mary Ellen Brennan, dated May 19, 2025 ("Brennan Decl."), ECF Nos. 86, 88 (under seal version), Ex. 20, at 2; Hartford's Responses to Plaintiff's Requests to Admit ("Hartford Resp. to Pl. RFAs"), Brennan Decl., Ex. 19, at 1.  Mr. Wilson's spinal cord was severely injured in the accident, rendering him paraplegic.  Wilson's Resp. to Pl. RFAs at 2; Hartford Resp. to Pl. RFAs at 2.  Because Mr. Wilson is a veteran, within the meaning of 38 U.S.C. § 101(2), Declaration of Mark Gore, dated May 19, 2025 ("Gore Decl."), ECF Nos. 91, 92 (under seal version), ¶ 16 & Ex. 2, Mr. Wilson has received medical care and services at VA medical facilities that related to and were made necessary by the workplace injury.  Declaration of Dr. Stephen Kornfeld, M.D., dated May 19, 2025, ECF Nos. 89, 90 (under seal version), Ex. 1, at 2; Gore Decl. ¶ 21 & Exs. 5-14.  Mr. Wilson was never billed for, nor did he ever pay for, these services.  *See* Wilson's Response to the United States' 56.1 Statement ¶¶ 7-9, ECF No. 125.

Prior to Mr. Wilson's workplace injury, Hartford issued a workers' compensation and employers liability insurance policy to JD Wilson Construction Corp., for the period May 11, 2013 to May 11, 2014 (the "Hartford Policy").  Hartford Resp. to Pl. RFAs at 2; Hartford Policy,

---

[2] The facts herein are taken directly from the Parties' Rule 56.1 statements and are undisputed unless stated otherwise.

Brennan Decl., Ex. 1.  The work-related injuries Mr. Wilson sustained as a result of the October 24, 2013 workplace accident were covered under the Hartford Policy. Hartford Policy at HARTFORD-USA-WILSON 000012, 000015; Hartford Resp. to Pl. RFAs at 2; Wilson Resp. to Pl. RFAs at 3; WC September 2014 Decision, WC File, Brennan Decl., Ex. 9, at WC 001997-WC 001998; Section 32 Agreement, WC File, Brennan Decl., Ex. 2, at WC 000151-WC 000157 (stipulating that "accident, notice and causal relationship [were] established for work-related injuries to the thoracic spine and spinal cord injury with paraplegia, neck, back, and chest").

Between the October 2013 workplace accident and August 2018, Hartford remitted payments to various providers who rendered medical care or treatment to Mr. Wilson in connection with the workplace injury.  *See generally* WC File, Brennan Decl., Exs. 2-17; Hartford Resp. to Pl. RFAs; Gore Decl. ¶ 26 & Ex. 3.  Hartford issued a check to the VA for $13,982.13 in April 2018 as reimbursement for care Mr. Wilson received at VA facilities relating to his workplace injury.  Gore Decl. ¶ 26 & Ex. 3; Hartford Answer ¶ 22, ECF No. 9.

Mr. Wilson brought a civil tort lawsuit relating to his workplace accident.  *See Wilson v. New Puck, LLC et al.*, Index No. 160849 (N.Y. Sup. Ct. 2013).  In August 2018, Mr. Wilson signed a release in connection with settlement of that suit (the "2018 Release Agreement").  *See* Wilson's Response to the United States' 56.1 Statement ¶ 25.  The 2018 Release Agreement included an agreement between Mr. Wilson and Hartford, whereby Hartford consented to the settlement and agreed to waive its workers' compensation lien and to fund a Medicare Set Aside Account, and Mr. Wilson agreed to enter into a "Section 32 settlement" whereby he would settle his workers' compensation claim with Hartford and waive entitlement to future workers' compensation benefits.  *See* 2018 Release Agreement, Brennan Decl., Ex. 21.

As will become relevant, the 2018 Release Agreement specifically provided that Hartford would be released from "any and all known, and/or unknown, personal injuries, conscious pain

and suffering, economic damages, or damages associated with death, of any/all kind which RELEASOR has or may have arising out of an accident/incident that occurred on October 24, 2013." Declaration of Deborah M. Jackson ("Jackson Decl."), ECF No. 78, Ex. D, at 001125; Declaration of Peter J. Molinaro ("Molinaro Decl."), ECF No. 79, Ex. B, at 002499. Mr. Wilson also certified that

> [T]here are no outstanding liens, rights of reimbursement or rights of subrogation affecting his [Mr. Wilson's] ability to settle these claims; or, if any such liens or rights exist, RELEASOR represents and warrants that ALL bills, costs, liens or rights for payment resulting from or arising out of RELEASOR'S alleged injuries, claims, accident or lawsuit are RELEASOR'S SOLE responsibility to repay/satisfy out of the gross proceeds of this settlement, except for such claims arising from Hartford's obligations pursuant to paragraphs "a", "b" and "c" of this agreement.

Jackson Decl., Ex. D, at 001126; Molinaro Decl., Ex. B., at 002500. Lastly, Mr. Wilson agreed to assume the costs of future medical expenses from the settlement proceeds and to indemnify Hartford from

> "*any and all damages, claims, rights to payment*, liens, rights to subrogation, including attorneys' fees, *brought by any* person, entity, healthcare provider, union, insurer, employer, workers compensation carrier or *governmental agency to recover any of these amounts or liens including, but not limited to, paid medical benefits*, workers compensation benefits, union benefits, income assistance /welfare benefits, disability benefits, lost wages, etc., provided to RELEASOR by ANY source including, but not limited to, Medicare, Medicaid, Social Security Administration, any unions, workers compensation carriers, healthcare companies, disability benefits providers, and/or any other entities, *including, but not limited to, those* in the State of New York or *affiliated in any respect with the Federal Government*, except as otherwise stated in this agreement.

Jackson Decl., Ex. D, at 001127 (emphasis added); Molinaro Decl., Ex. B, at 002501 (emphasis added).

Hartford, Wilson, and JD Wilson Construction, Corp. later executed an agreement pursuant to Section 32 of the New York workers' compensation law (the "Section 32 Agreement"). *See* Section 32 Agreement, WC File, Brennan Decl., Ex. 2, at WC 000151-WC 000157. The federal

6

government was not party to this litigation or any agreements entered between Mr. Wilson and

Hartford. The Section 32 Agreement contained many relevant provisions, including:

> 1. The claimant, Richard Wilson, agrees to have the Workers' Compensation claim against JD Wilson Construction, Corp., and The Hartford closed by the New York State Workers' Compensation Board, and all future medical and indemnity claims waived relating to the accident of October 24, 2013.

> \*        \*        \*

> 7. The carrier has already paid for medical treatment and prescriptions in this case for which they are responsible. They have no further responsibility for medical, prescriptions or associated costs in this matter. Any C-8.1B's not previously acted upon will be resolved in favor of the carrier. The claimant agrees and understands he will be responsible for causally related medical treatments and medication which are either currently outstanding or originate after the date of the hearing or provisional approval of this agreement by the Workers' Compensation Board.

> \*        \*        \*

> 9. The parties agree that this agreement represents the settlement, resolution, satisfaction, and closure of the Workers' Compensation claim G1021176 based upon the above terms.

> \*        \*        \*

> 14. The claimant represents and understands that he may be personally responsible for the cost of any medical treatment or prescription cost which currently exists or might be necessary in the future on account of the injury of this file, and that he may make disclosure of the existence of this workers' compensation claim to any healthcare provider that he might see in the future for treatment of the injury related to this file, in order that any such provider submit billings for said treatment to any secondary payor. The claimant expressly releases the carrier from any further liability that it may have otherwise had for further payment of any medical treatment for the injury of this file.

> \*        \*        \*

> 15. Richard Wilson does hereby release, acquit, and forever discharge the employer/carrier from any and all actions, causes of action, claims and demands, damages, costs, loss of service, expenses, and compensation, on account or in any way growing out of this matter and do hereby agree to indemnify and save harmless the employer/carrier from further claims or demands, cost, or expenses arising out of the injuries or damages sustained by the claimant.

Perlberg Declaration ("Perlberg Decl."), ECF No. 105, Ex. T ¶¶ 1, 7, 9, 14-15.

The New York Workers' Compensation Board approved the Section 32 Agreement on February 18, 2021. Notice of Approval, Section 32 Agreement, WC File, Brennan Decl., Ex. 2, at WC 000079-WC 000081. In its notice of approval, the Board stated that its approval of the agreement "cannot and should not be interpreted as a finding that the terms of the agreement adequately take into account the interests of Medicare or any other third party" and that it "is the sole responsibility of the parties to the waiver agreement to ensure that Medicare's or any other third party's interests are taken into account." *Id.*

After April 2018, Mr. Wilson continued to receive care relating to his workplace injuries at VA facilities. Gore Decl. ¶¶ 27, 37, 39 & Exs. 5-14. The VA attempted to secure reimbursement from Hartford pursuant to its recovery rights under 38 U.S.C. § 1729. Gore Decl. ¶ 29. Between November 2018 and January 2023, the VA provided Mr. Wilson's counsel and Hartford with additional updated billing ledgers documenting further charges that accrued as a result of Mr. Wilson's ongoing treatment. *Id.*

In March 2022, the VA notified Mr. Wilson's counsel by letter that the United States intended to initiate legal proceedings against Hartford to enforce its rights under 38 U.S.C. § 1729(b)(2)(B). Gore Decl. ¶¶ 9, 32 & Ex. 4. The VA's March 2022 letter informed counsel that, at that time, the reasonable charges for the care and services that VA had provided and/or paid for totaled $227,049.28, and that it had received payments totaling $13,982.13 against that balance. *Id.* ¶ 32.

On January 25, 2023, the United States filed suit against Hartford to recover the unpaid balances per § 1729. *See* Compl., ECF No. 1. Hartford then filed a Third-Party Complaint against Wilson, seeking to enforce the 2018 Release Agreement's indemnity provision for future medical charges. *See* ECF No. 23. The Parties respectively filed cross-motions for summary judgment in May 2025. *See* Hartford Motion; United States Motion; Wilson Motion. These motions address

8

only total liability for payment, leaving the factual determination as to the amount of medical expenses for subsequent proceedings.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586. The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

9

matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Across the various motions, the Parties seek clarity as to ultimate responsibility for payment, leaving the amount of payment at issue for further factual development. The Court concludes that the United States is entitled to recovery under § 1729, that Mr. Wilson is required to indemnify Hartford under the 2018 Release Agreement, and that Mr. Wilson's claims against the United States fail as a matter of law.

## I.      The United States is Entitled to Recovery Under the Statute

As explained above, § 1729 entitles the United States to "recover or collect from a third party" the "reasonable charges" of "care or services" furnished or paid for by the United States "to the extent that the recipient or provider of the care or services would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished or paid for by a department or agency of the United States." 38 U.S.C. § 1729(a)(1). It is undisputed that: (1) the VA furnished medical care to treat Mr. Wilson's severe workplace injury and (2) that Hartford's policy covered Mr. Wilson's workplace injury. *See* Hartford Policy at 000015 (stating that Hartford will "pay promptly when due the benefits required of [the insured employer] by the workers compensation law"); N.Y. WORKERS' COMP. LAW § 13(a) (employers liable for "payment of the expenses of medical . . . attendance or treatment, nurse and hospital service . . . resulting from and necessitated by the injury"). It appears to the Court that the statute is specifically designed to capture medical expenses like those at issue in this case.

Hartford and Mr. Wilson, however, argue that, because of the 2018 Release Agreement entered between Hartford and Mr. Wilson, the Government can no longer recover. In their view, the Government's right is entirely tied to that of Wilson. Thus, by signing the release, Mr. Wilson

10

extinguished not only his right to recovery, but also that of the United States, a non-party to the litigation or the agreement.

The Court disagrees. To begin, § 1729 expressly states that "no provision of any contract or other agreement" may "prevent recovery or collection by the United States" under the statute. *Id.* § 1729(f). Further, in § 1729(c)(1), Congress explicitly gave the Secretary of Veterans Affairs—and no one else—the authority to settle, waive, or compromise the government's claims arising under § 1729. The Court concludes that these statutory provisions clearly establish that the actions of private entities cannot thwart the United States' ability to recover so long as the statutory conditions are met.

The Court also finds that the statutory language indicating that the government is "subrogated to any right or claim" of the injured veteran, § 1729(b)(1), does not imply that the injured veteran has the ability to sign away the government's right to recovery. Rather, like in the FMCRA context, § 1729(b)(1) indicates that the federal government may recover only where the third party would otherwise have been liable to the injured veteran for medical costs had they been incurred at a non-VA hospital. *See Holbrook v. Andersen Corp.*, 996 F.2d 1339, 1341 (1st Cir. 1993) ("[T]he government's right is not extinguished by the injured person's settlement and release with the tortfeasor."). Because Hartford was clearly liable to Mr. Wilson for his medical expenses related to the workplace accident, the United States can recover the costs of care that Hartford would have otherwise been on the hook for had Mr. Wilson not obtained free care from the VA.[3]

---

[3] The United States moves to strike the expert report of Peter Molinaro, *see* ECF No. 79, who opines on the legal framework concerning Section 32 agreements and the interaction with § 1729. *See* ECF No. 96. For purposes of the Summary Judgment Motions, the Court **DENIES** the Motion (and the Government's related request for fees and costs associated with the taking of Mr. Molinaro's deposition) **WITHOUT PREJUDICE** and gives the report appropriate weight in making this ruling.

11

**II.      Mr. Wilson Must Indemnify Hartford Pursuant to the Contract**

A "contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous." *Bradley v. Earl B. Feiden, Inc.*, 864 N.E.2d 600, 605 (N.Y. 2005). "A party's right to contractual indemnification depends upon the specific language of the relevant contract." *Campisi v. Gambar Food Corp.*, 13 N.Y.S.3d 567, 568 (N.Y. App. Div. 2015). An "indemnity clause must reflect the unmistakable intent of the parties as to the scope of its coverage." *Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*, No. 22 Civ. 5964, 2025 WL 81211, at *5 (S.D.N.Y. Jan. 13, 2025) (citing *Schiavone Constr. Co., Inc. v. Nassau Cnty.*, 717 F.2d 747, 751 (2d Cir. 1983)).

In exchange for a large payment, Mr. Wilson agreed to indemnify Hartford for any and all outstanding medical expenses relating to his workers' compensation claim. He did so in the August 2018 Release Agreement. *See* Jackson Decl., Ex. D at 001125-27 ("[T]here are no outstanding liens, rights of reimbursement or rights of subrogation affecting his [Mr. Wilson's] ability to settle these claims; or, if any such liens or rights exist, RELEASOR represents and warrants that ALL bills, costs, liens or rights for payment resulting from or arising out of RELEASOR'S alleged injuries, claims, accident or lawsuit are RELEASOR'S SOLE responsibility to repay/satisfy out of the gross proceeds of this settlement . . ."). And he did so again in the Section 32 Agreement. *See, e.g.*, Perlberg Decl., Ex. T ¶ 14 ("The claimant represents and understands that he may be personally responsible for the cost of any medical treatment or prescription cost which currently exists or might be necessary in the future on account of the injury of this file . . ."). Both of these clauses appear to be "relatively clear and unambiguous indemnification provision[s]" under New York law. *See Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 331 (S.D.N.Y. 2011).

12

Seeing the clarity of these contractual provisions, Mr. Wilson argues that his duty to indemnify Hartford was not triggered until February 18, 2021, the date that the Workers' Compensation Board approved the Section 32 Agreement. Wilson Reply Brief at 18, ECF No. 124. Mr. Wilson points to New York Workers' Compensation Law for the proposition that a Section 32 waiver agreement "shall not bind the parties to it, unless it is approved by the [WC Board]." *Id.*; *see also* N.Y. Workers' Comp. Law § 32(a). In his view, the Section 32 Agreement only became final, conclusive, and binding once approved by the WC Board.

The Court concludes that, even assuming Mr. Wilson is correct that the 2018 Settlement Agreement and the Section 32 Agreement carried no force until approved by the Workers' Compensation Board, Mr. Wilson remains liable to Hartford for the full amount. Looking at the specific contractual language, Mr. Wilson agreed across multiple provisions that

> The carrier has already paid for medical treatment and prescriptions in this case for which they are responsible. They have no further responsibility for medical, prescriptions or associated costs in this matter. Any C-8.1B's not previously acted upon will be resolved in favor of the carrier. ***The claimant agrees and understands he will be responsible for causally related medical treatments*** and medication which are either ***currently outstanding or originate after the date of the hearing*** or provisional approval of this agreement by the Workers' Compensation Board.

Perlberg Decl., Ex. T ¶ 7 (emphasis added). There is no dispute that the costs for services rendered by the VA for treatment of his workplace injury were either "currently outstanding" or "originate[d] after the date of the hearing." As a result, Mr. Wilson is liable for these payments under the express terms of the agreement.

### III.    Mr. Wilson's claims against the United States fail as a matter of law

Having determined that Mr. Wilson must indemnify Hartford's debt to the United States, the Court turns to Mr. Wilson's argument that recovery is "precluded under the doctrine of unclean hands" stemming from alleged representations that "his treatment was cost-free to him." Mem. of Law in Supp. of Richard L. Wilson's Mot. for Summ. J. at 17, ECF No. 106. Mr. Wilson cites

13

deposition transcripts indicating that Mr. Wilson was encouraged to receive care at the VA for treatment of his injuries in 2014 or 2015. *Id.* at 17-18. Mr. Wilson alleges that he was repeatedly assured that the treatment would be free of charge. *Id.* at 18. However, the VA then proceeded to bill Hartford for the treatment with "full awareness of the Settlement Agreement's terms." *Id.* at 19.

The Court concludes that Mr. Wilson's unclean hands defense fails as a matter of law. Unclean hands is a defense to a suit in equity where the party seeking enforcement of a contract "is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Tiffany (NJ) Inc. v. eBay Inc.*, No. 04 Civ. 4607, 2006 WL 8461405, at *2 (S.D.N.Y. Mar. 31, 2006). This defense requires a "finding of bad faith." *Jones Apparel Grp., Inc. v. Piccone*, No. 94 Civ. 754, 1994 WL 260767, at *4 (S.D.N.Y. June 8, 1994).

Construing the facts in the light most favorable to Mr. Wilson,[4] the Court cannot conclude that the government acted in bad faith while encouraging Mr. Wilson to seek treatment. To begin, much of Mr. Wilson's cited testimony concerns encouragement to receive treatment that occurred well in advance of any obligation to indemnify Hartford. To the extent the treatment received resulted in a payment obligation for Wilson, it was only through his decision to sign the 2018 Release and Section 32 Agreements that he transferred the outstanding lien to himself. Mr. Wilson was represented by counsel and explicitly agreed to assume any outstanding financial obligations stemming from treatment of his injuries. It is not the United States' doing that Mr. Wilson

---

[4] It is unclear whether the United States seeks dismissal of Mr. Wilson's claims under Rule 12(b)(6) or Summary Judgment. *See* Mem. of Law in Supp. of U.S. Mot. for Partial Summ. J. at 26, ECF No. 93. Regardless, the Court, having the power to convert a motion to dismiss to one for summary judgment, construes the motion as one for summary judgment and applies the relevant legal standard. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

14

knowingly agreed to indemnify Hartford for this obligation. The Court therefore cannot find that the United States acted in bad faith when it attempted to collect its outstanding debt from Hartford. Accordingly, the Court concludes that Wilson's claims against the United States fail.

## IV.   Motion to Seal

Separate from the Summary Judgment motions, the Parties seek to seal several pieces of information relating to the settlement amount and Wilson's medical history. The Court addresses each set of documents in turn.

### A. Legal Standard

The Court applies a three-part inquiry to determine whether to seal a document. *See Olson v. Major League Baseball*, 29 F.4th 59, 87-88 (2d Cir. 2022). First, a court determines whether a document is a "judicial document," subject to a presumptive public right of access. *See id.* at 87. A judicial document is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

Second, a court determines the weight of the presumption that attaches to the document, looking to "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Olson*, 29 F.4th at 87-88. "The presumption of public access exists along a continuum. The strongest presumption attaches where the documents determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties." *Id.* at 89. However, documents do not "receive different weights of presumption based on the extent to which they [are] relied upon in resolving the motion." *Lugosch*, 435 F.3d at 123.

"Finally, once the weight of the presumption has been assessed, the court is required to balance competing considerations against it." *Olson*, 29 F.4th at 88. "[C]ontinued sealing of the

documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. Competing considerations may include the protection of "sensitive business information," the release of which could cause a litigant "competitive harm." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 608 (S.D.N.Y. 2022). "A further countervailing consideration is the privacy interests of innocent third parties which should weigh heavily in a court's balancing equation." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 Misc. 2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023), *reconsideration denied*, 2023 WL 3966703 (S.D.N.Y. June 13, 2023) (citing *Application of Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990)). The court may deny public disclosure of the record only "if the factors counseling against public access outweigh the presumption of access afforded to that record." *Olson*, 29 F.4th at 88.

## B. Application

The Court concludes that each of the types of documents contain confidential information that can properly be sealed by the Court and that the redactions proposed are sufficiently tailored. This includes: (1) Mr. Wilson's medical records (wholly redacted), (2) the cash value of the Settlement Agreement (partially redacted), (3) Mr. Wilson's workers' compensation file (wholly redacted), and (4) documents concerning Mr. Wilson's entitlement to service-connected disability status (wholly redacted).

The requests to seal documents pertaining to Mr. Wilson's medical records are proper for several reasons. To begin, Mr. Wilson's medical records and any documents concerning his disability status have little bearing on this matter. Further, it is fundamentally proper to protect the privacy interests of an individual's medical history where possible to do so. *See, e.g., Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 19 Civ. 3766, 2020 WL 7706741,

16

at \*2 (S.D.N.Y. Dec. 29, 2020) (referring to "[h]igher values that may justify the sealing of documents," including "privacy interests" (citing *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655, 2012 WL 691545, at \*2 (S.D.N.Y. Mar. 2, 2012))); *Republic of Turkey v. Christie's Inc.*, No. 17 Civ. 3086, 2020 WL 7338074, at \*1 (S.D.N.Y. Sept. 11, 2020) ("Specifically, for the redacted portions, the parties' and third parties' privacy interests outweigh the 'value of such information to those monitoring the federal courts.'").  And because the workers' compensation file and documents concerning service-connected disability also almost exclusively detail Mr. Wilson's medical history, the Court finds that filing under seal is proper for these documents as well.  As a result, the Court **GRANTS** the Motion to Seal the documents relating to Exhibits 1-9 and 14-22 of Ms. Brennan's declaration at ECF No. 71.

The Court also finds that the partial redactions of Mr. Wilson's settlement agreement with Hartford (among other parties) are sufficiently tailored.  The Court can fully adjudicate the claims at issue without revealing Mr. Wilson's personal financial information, and Mr. Wilson's privacy interests overcome the presumption of public access.  *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2023 WL 3477552, at \*3 (S.D.N.Y. May 16, 2023) (noting that "[p]ersonal and financial information implicate 'significant privacy interests' that overcome the strong presumption of public access, and this information has minimal relevance to the Court's decision on the summary judgment motions" (citing *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345, 2021 WL 1177737, at \*2 (S.D.N.Y. Mar. 29, 2021)).  Thus, the sealing motion is **GRANTED** with respect to the proposed redactions.

## CONCLUSION

To summarize, the United States' Motion for Summary Judgment is **GRANTED** in full, Hartford's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Mr. Wilson's Motion for Summary Judgment is **DENIED**.  The parties' Joint Sealing Motion

17

is **GRANTED**.  The United States's Motion to Strike Hartford's proposed expert's testimony is **DENIED WITHOUT PREJUDICE**.

Within seven (7) days of this Opinion, the Parties are **ORDERED** to meet and confer regarding any remaining issues and claims in this matter.  The Parties are **ORDERED** to file a joint status letter informing the Court of any remaining issues of fact or law to be decided within fourteen (14) days of this Opinion, and a proposed process for resolving such issues (e.g., via further summary judgment proceedings, or trial on the merits), including a proposed schedule for further proceedings.  If the parties believe that trial on the merits is appropriate, the letter shall state the estimated length of trial, and the parties' availability for trial in June, July, and August 2026.  The letter shall also state whether parties seek a referral to the District's private mediation program, or to the assigned Magistrate Judge for a settlement conference.

The Clerk of Court is respectfully directed to terminate ECF Nos. 70, 73, 84, 96, and 102.

SO ORDERED.

Dated: February 25, 2026

New York, New York

_____

DALE E. HO
United States District Judge